**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x

SHANTEL SULLIVAN,                                Case No.:

               Plaintiff,                          **<u>COMPLAINT</u>**

         -against-                         ***Jury Trial Demanded***

AMAZON.COM, INC. and BINDU
PIRLAMARLA,

             Defendants.
-------------------------------------------------------------x

      PLAINTIFF SHANTEL SULLIVAN, by and through her attorneys, Goddard Law PLLC,

whose offices are located at 39 Broadway, Suite 1540, New York, New York 10006, alleges upon

knowledge with respect to herself, and upon information and belief as to all other matters, as

follows:

<u>**PRELIMINARY STATEMENT**</u>

      1.     The nature of this action is employment discrimination on the basis of Plaintiff's

race, hostile work environment, and unequal pay in violation of Title VII of the Civil Rights Act

of 1964, as amended ("Title VII"); 42 U.S.C. § 1981 ("Section 1981") the New York State Human

Rights Law ("NYSHRL"); the New York City Human Rights Law ("NYCHRL"); and the New

York State Equal Pay provisions of the N.Y. Labor Law ("NYLL").

      2.     This action arises from Amazon.Com, Inc.'s ("Defendant Amazon") unlawful

discrimination, retaliation, and wrongful termination of Plaintiff, a highly qualified and high-

performing Black Senior Product Manager. Despite consistently excelling in her role, earning top

performance reviews, and receiving repeated praise from executives and mentors, Plaintiff was

denied fair opportunities for advancement, subjected to fabricated criticism, stripped of credit for

her work, and ultimately terminated under false pretenses.

3.      Plaintiff joined Amazon in August 2020, where she excelled as a Senior Product Manager on the Amazon Layaway team—a program specifically designed to expand access for low-income customers. From the outset, Plaintiff's supervisors and mentors lauded her performance, and she was encouraged to seek promotion. Her work was publicly praised by Amazon executives, and her contributions were instrumental in the team's success.

4.      However, in August 2022, Plaintiff was assigned a new supervisor, Bindu Pirlamarla ("Defendant Pirlamarla") who immediately exhibited favoritism toward Indian and white employees while treating Plaintiff and the only other Black team member with hostility and disregard. Defendant Pirlamarla refused to support Plaintiff's promotion despite prior endorsements, fabricated deficiencies in her technical skills, and falsely claimed a technical assessment had been conducted when in fact she had never reviewed Plaintiff's work product.

5.      After months of resistance and obstruction, Plaintiff finally received her well-earned promotion in December 2022. Yet, Defendant Pirlamarla escalated her discriminatory conduct—excluding Plaintiff from meetings, undermining her contributions, and subjecting her and her Black colleague, Program Manager Tavaya Davis, to harsher scrutiny than their non-Black peers.

6.      In April 2023, Plaintiff again received a positive performance review, consistent with her standing in the top tier of her team. Nonetheless, only days later, Defendant Pirlamarla and Amazon's HR department informed Plaintiff that her position was being "deprioritized." In reality, Plaintiff and Co-worker Davis—the only Black members of the team—were the only employees terminated. Non-Black employees were reassigned to new roles, and Plaintiff's position was soon filled by a non-Black employee.

7.       Plaintiff brings this action to redress Defendants' violations of federal, state, and

city law, including discrimination on the basis of race, failure to promote, retaliation, and discriminatory termination. Plaintiff seeks compensatory damages, punitive damages, and injunctive relief to remedy Defendants' misconduct and to prevent Amazon from continuing its discriminatory practices.

## THE PARTIES

8.      Plaintiff Shantel Sullivan ("Plaintiff") is a Black female citizen of the United States who currently resides in Atlanta, Georgia and who was formerly employed by Defendant Amazon.com, Inc.

9.      Plaintiff was subjected to race discrimination, a hostile work environment, unequal pay, and retaliation, which ultimately led to Plaintiff's termination from her position at Defendant Amazon.

10.     Upon information and belief, Defendant Amazon was and is a corporation registered in Delaware and permitted to do business in New York.

11.     Defendant Amazon maintains an office at 450 W. 33rd Street, New York, New York 10001.

12.     Plaintiff resided in Brooklyn, New York and later Atlanta, Georgia, while employed by Defendant Amazon.

13.     Defendant Bindu Pirlamarla (herein "Defendant Pirlamarla") was a Senior Manager at Defendant Amazon and Plaintiff's direct supervisor from August 2022 until Plaintiff's termination on April 26, 2023. At all times, Defendant Pirlamarla had the ability to affect the terms and conditions of Plaintiff's employment.

14.    Plaintiff was, at all times relevant herein, Defendant Amazon's "employee" within the meaning of all relevant Federal, State, and local laws, including but not limited to Title VII, the NYSHRL, the NYCHRL, the NYLL, and the New York State Equal Pay Act.

15.    Defendant Amazon was, at all times relevant herein, Plaintiff's "employer" within the meaning of all relevant Federal, State, and local laws, including but not limited to Title VII, the NYSHRL, the NYCHRL, the NYLL, and the New York State Equal Pay Act.

## JURISDICTION, VENUE, & PROCEDURAL REQUIREMENTS

16.    This is a civil action for monetary damages and such other relief as the Court deems just and proper based upon Defendant's discrimination against Plaintiff based on her race.

17.    This Court has original jurisdiction over Plaintiff's Federal claims pursuant to 28 U.S.C. §§ 1331 and 1343.  This Court has supplemental jurisdiction over Plaintiff's state law and city law claims pursuant to 28 U.S.C. § 1367 because those claims are so related to the federal claims that they form a part of the same case or controversy between Plaintiff and Defendant.

18.    This Complaint is additionally brought pursuant to the New York City Administrative Code §§ 8-101 *et seq*., (the "Administrative Code") to redress discrimination with respect to terms and conditions or privileges of employment.

19.    Venue for this action properly lies in this district pursuant to 28 U.S.C § 1391.

20.    All precedents to filing the instant action have been fulfilled.  On or about October 9, 2023, Plaintiff filed a timely Charge of Discrimination with the EEOC. On or about June 26, 2025, the EEOC issued Plaintiff a Notice of Right to Sue. The Complaint in this matter was filed within 90 days of Plaintiff's receipt of her Right to Sue Notice.

21.    This Complaint is additionally brought pursuant to any other cause of action which can be inferred from the facts set forth herein.

22.     Plaintiff demands a jury trial.

## FACTUAL BACKGROUND

### Plaintiff Is Hired at Defendant Amazon

23.     In or around August 2020, Plaintiff interviewed for a position at Defendant Amazon.

24.     In or around August 2020, Plaintiff was hired at Defendant Amazon as a Senior Product Manager with a base salary of $162,000.00 as part of a broader compensation package.

25.     Plaintiff was hired for a fully remote position on the Amazon Layaway team, which was based in New York.  The Amazon Layaway team was responsible for creating a payment program for low-income customers to purchase items without paying the full price up front.

26.     The Layaway team had twelve members.  Besides Plaintiff, there was only one other Black person on the Layaway team, Coworker Tavaya Davis ("Coworker Davis").

27.     Plaintiff's supervisor at the time of her hire was Ruchika Gupta ("Supervisor Ruchika").

28.     New employees at Defendant Amazon were assigned a "Sponsor" who reviewed their work on a regular basis, gave feedback, and overall provided mentorship on working at the company.  Plaintiff's sponsor assigned upon her hire was Cam Westfall ("Mentor Westfall").

### Plaintiff Excels in her Role

29.     From the onset of her employment, Plaintiff received regular praise and approval from Supervisor Ruchika and Mentor Westfall.

30.     Plaintiff received performance reviews in March 2021 and March 2022.  She consistently ranked at "meeting expectations" or "exceeding expectations" in all performance categories in those performance reviews.

31.     In or around Summer 2022, Supervisor Ruchika and Mentor Westfall told Plaintiff that, due to her excellent performance, she was qualified for a promotion to Senior Technical Product Manager, and they would support her in applying for this promotion.

32.     Plaintiff was thrilled with her career at Amazon and excited that she had earned the support of her Mentor and Supervisor and the possibility for career growth at the company.

## Plaintiff Gets a New Supervisor

33.     In or around August 2022, Defendant Bindu Pirlamarla ("Defendant Pirlamarla") became Plaintiff's Supervisor.  Defendant Pirlamarla immediately displayed an overt preference for non-Black employees.  She was extremely warm and friendly to the team members of Indian descent and was also friendly to white employees.  By comparison, she was not nice or friendly to Plaintiff from the first day that they met.

34.     In or around September 2022, Plaintiff discussed with Defendant Pirlamarla that, based on the suggestions of Mentor Westfall and her previous Supervisor, she was in the process of seeking a promotion to Senior Technical Product Manager.

35.     Defendant Pirlamarla said she would discuss the matter with Mentor Westfall and get back to Plaintiff.

## Defendant Pirlamarla Refuses to Support Plaintiff for a Promotion and Does Not Credit her Work

36.     In or around September 2022, Mentor Westfall called Plaintiff and expressed serious concerns about her future.  He told her that he had spoken to Defendant Pirlamarla about Plaintiff's promotion, and even though he had assured her that Plaintiff was ready, Defendant Pirlamarla said she was reluctant to support Plaintiff's promotion.  When Mentor Westfall tried to understand why Defendant Pirlamarla did not want to support Plaintiff's promotion that both he and Plaintiff's prior Supervisor supported, she stated that Plaintiff lacked "technical acumen" but

was unable to provide any specifics. Mentor Westfall said he found the comment strange, unfounded, and one he had never heard about Plaintiff before. He stated that he was unable to get Defendant Pirlamarla to specify what she meant.

37.    In or around September 2022, Plaintiff spoke to Defendant Pirlamarla and told her that Mentor Westfall mentioned that Defendant Pirlamarla had concerns with her technical skills. Plaintiff asked what specific concerns Defendant Pirlamarla had. That way, she could work on improving anything she needed to and gain Defendant Pirlamarla's support for a promotion.

38.    Defendant Pirlamarla bizarrely claimed that she did not voice any criticisms of Plaintiff's performance to Mentor Westfall. She told Plaintiff she would get back to her about the promotion.

39.    In or around September 2022, Plaintiff, confused by Defendant Pirlamarla going back on her comments, followed up on this meeting with an email asking Defendant Pirlamarla again if there were any concerns with her performance that would prevent her from getting a promotion.

40.    Defendant Pirlamarla did not reply to the email.

41.    In or around October 2022, Plaintiff noticed that, on emails with her team and Supervisor Pirlamarla, Defendant Pirlamarla credited and thanked all of her other non-Black colleagues for their work, but did not thank Plaintiff, even though Plaintiff was the leader on most of the work discussed. She also failed to credit the other Black employee on the team.

42.    Plaintiff emailed Defendant Pirlamarla and asked why her colleagues were all praised, but she was not. Defendant Pirlamarla replied that her exclusion of Plaintiff was an accidental "oversight."

43.     In or around October 2022, at their next 1:1 meeting, Plaintiff asked Defendant Pirlamarla again why her non-Black colleagues were acknowledged and praised in emails, but she was not.  Plaintiff asked if Defendant Pirlamarla had any issues with her performance.

44.     Defendant Pirlamarla coldly informed Plaintiff that there was "no problem" with her performance, and it was simply an "oversight" that she forgot to acknowledge Plaintiff's work.

**Plaintiff Continues to Excel in her Role**

45.     In or around September 2022, Vice President Sam Hayworth ("VP Hayworth") praised Plaintiff's presentation skills and asked her to lead a townhall event where she would speak on behalf of the Layaway team, present their overall strategy, and their success since launching.

46.     After the townhall, VP Hayworth and other Defendant Amazon executives commended Plaintiff for her presentation skills.

47.     In or around October 2022, VP Hayworth told Plaintiff that he continued to be impressed with her work and asked Plaintiff to train the newly hired executive assistants on executive presence and public speaking skills.

48.     Plaintiff happily obliged and conducted a training session with the executive assistants in or around October 2022.

49.     Based on praise for her hard work by Defendant Amazon executives and the support of Mentor Westfall and her previous supervisor, Plaintiff understood that she was a favorable candidate for a promotion.

**Defendant Pirlamarla Supports Plaintiff's White Colleague for a Promotion but Still Refuses to Support Her**

50.     In or around October 2022, Plaintiff got an email from Defendant Pirlamarla asking her to provide feedback on her peer, Michael ("Manager Michael"), a white male, because she was supporting him for a promotion.

8

51.     Plaintiff agreed to provide feedback but asked for an update on her own promotion status.

52.     Defendant Pirlamarla replied saying that Plaintiff had to get approval from VP Hayworth and a "technical assessor," who would conduct a technical assessment of her work, before she could be considered for a promotion.

53.     Plaintiff told Mentor Westfall that Defendant Pirlamarla required her to get approval from VP Hayworth and a technical assessment before considering her for a promotion. However, Plaintiff discovered that these requirements were pretextual when Mentor Westfall told Plaintiff that a VP approval did not make any sense, and other employees did not have to go through this requirement to get the promotion she was seeking.

**Defendant Pirlamarla Falsely Claims Plaintiff Failed a Technical Assessment Without Reviewing her Documentation**

54.     Because she was committed to working towards the promotion Plaintiff knew she deserved, Plaintiff collected documentation of her work product for a technical assessment.

55.     In or around October 2022, Plaintiff put her documentation together in an online folder and sent a link to this folder to Defendant Pirlamarla.

56.     Later that month, in or around October 2022, Defendant Pirlamarla called Plaintiff, told her that a technical assessor reviewed her documentation, and noted that there were issues with her work.  Defendant Pirlamarla stated that she also reviewed Plaintiff's documentation and told her that "the scope is there but the influence is not" and claimed that Plaintiff did not have clear contributions to "technical architecture."

57.     Plaintiff was shocked as she had never heard this feedback from Defendant Pirlamarla or any of the engineers she worked with before.

58.    Plaintiff asked for specification of what Defendant Pirlamarla meant and specific examples, but Defendant Pirlamarla refused to provide any.

59.    Defendant Pirlamarla made it clear Plaintiff would not be considered for a promotion, and the call ended.

60.    After this conversation, Plaintiff called Mentor Westfall to discuss the strange feedback Defendant Pirlamarla gave on her work product.

61.    Mentor Westfall said that the feedback did not align with his assessment of her work.

62.    He said he would discuss the matter with Defendant Pirlamarla and asked Plaintiff to send him the same documentation. So, she sent him the same link to her electronic folder she sent to Supervisor Pirlamarla.

63.    Mentor Westfall called Plaintiff later that week and said that he was unable to access the documentation from the link she sent him with the online folder.  He stated that he followed up with Defendant Pirlamarla and asked if she could access the documentation and send it to him, and she replied that she could not access it either.

64.    Plaintiff immediately returned to the link she had sent and realized she had mistakenly left the access to her folder restricted to only her account.  Plaintiff was astonished that Defendant Pirlamarla falsely claimed that she and a technical assessor had done a technical assessment of her documentation when they never viewed it.

65.    It became clear to Plaintiff and Mentor Westfall that Defendant Pirlamarla fabricated her criticisms of Plaintiff's work.

66.     Mentor Westfall told Plaintiff he would discuss this with Defendant Pirlamarla. Mentor Westfall said he would act as Plaintiff's technical assessor and review her documentation to ensure she was qualified for the promotion.

67.     Plaintiff waited to hear back from Mentor Westfall about her promotion.

### Plaintiff Is Finally Given a Promotion

68.     In or around December 2022, Defendant Amazon informed Plaintiff that she would be granted the promotion to Senior Technical Manager.

### Defendant Pirlamarla Escalates the Discrimination

69.     Beginning in or around January 2023, Defendant Pirlamarla acted aggressively hostile towards Plaintiff at meetings.  Defendant Pirlamarla pleasantly interacted with Plaintiff's non-Black colleagues, praised their work, and thanked them for their contributions. Meanwhile, Defendant Pirlamarla aggressively rejected Plaintiff's contributions and went out of her way to disagree with her.

70.     Defendant Pirlamarla also excluded Plaintiff from meetings with engineering managers, making it harder for her to do her job.

### Defendant Pirlamarla Discriminates Against Plaintiff's Black Colleague

71.     In or around early 2023, Plaintiff met with her Black coworker, Program Manager Tavaya Davis (herein "Coworker Davis").

72.     Coworker Davis said she noticed that Defendant Pirlamarla was extremely combative with Plaintiff in meetings, and she shared that Defendant Pirlamarla also treated her with unjust hostility.

73. Coworker Davis told Plaintiff that Defendant Pirlamarla placed her on a Performance Improvement Plan ("PIP") even though she was outperforming her white peers who were not placed on PIPs.

### Plaintiff Receives a Positive Performance Review

74. In or around April 2023, Plaintiff received a positive performance review, which was based on both peer and supervisor feedback. Plaintiff was not surprised because her performance metrics placed her in the top 10% of her team.

### Plaintiff Is Terminated

75. On or around April 26, 2023, Plaintiff was called into a meeting with Defendant Pirlamarla and an HR Representative named Sarah.

76. Defendant Pirlamarla informed Plaintiff that she was being terminated because her team's product was being "deprioritized."

77. Plaintiff and Coworker Davis, the only Black employees on the team, were the only team members laid off. All non-Black team members were shifted into other positions at Defendant Amazon.

78. Defendant Pirlamarla coldly informed Plaintiff "there are no other roles available" at the technological giant, Defendant Amazon, that Plaintiff could be transferred to.

79. Plaintiff's role was later filled by a non-Black employee who transferred from another Amazon department.

### AS AND FOR THE FIRST CAUSE OF ACTION
*Race Discrimination in Violation of Title VII, the NYSHRL, and the NYCHRL*
*Against Defendant Amazon*

80. Plaintiff repeats and realleges the allegations contained in the paragraphs above as if separately set forth herein.

81.     Plaintiff was discriminated against in the terms and conditions of her employment because of her race in violation of Title VII, the New York State Human Rights Law, and the New York City Human Rights Law.

82.     Plaintiff is Black and therefore is a member of a protected class. Plaintiff was qualified to work for Defendants.  She more than satisfactorily performed the duties required for her position.

83.     Defendant Amazon further intentionally subjected Plaintiff to disparate treatment in the workplace by denying her promotions for which she was qualified while promoting less qualified coworkers, subjecting her to a hostile work environment, and terminating her employment while retaining similarly situated non-Black employees during an alleged reduction in force.

84.     As a direct and proximate result of said unlawful employment practices and disregard for Plaintiff's rights and sensibilities, Plaintiff has lost and will continue to lose substantial income, including, but not limited to wages, social security, and other benefits due to her.

85.     As a further direct and proximate result of said unlawful employment practices, Plaintiff has suffered extreme mental anguish, outrage, severe anxiety about her future and her ability to support herself and her family, harm to her employability and earning capacity, painful embarrassment among her family, friends, and coworkers, damage to her good reputation, disruption of her personal life, and the loss of enjoyment of the ordinary pleasures of everyday life.

86.     Defendant Amazon acted intentionally and with malice and/or reckless indifference to Plaintiff's Federal-law, State-law and City-law protected rights.

87.     Based on Defendants' discrimination, Plaintiff is entitled to all remedies in violation of Title VII, the NYSHRL, and the NYCHRL against all Defendants.  Plaintiff shall also seek attorney's fees and punitive damages.

## AS AND FOR THE SECOND CAUSE OF ACTION
*Unequal Pay in Violation of the New York State Equal Pay Act, NYLL Labor Law §§ §§ 194, 198 Against Defendant Amazon*

88.     Plaintiff repeats and realleges the allegations contained in the paragraphs above as if separately set forth here.

89.     At all relevant times, Plaintiff was an employee, and Defendants were employers within the meaning of the New York Labor Law, New York State Equal Pay law.

90.     The acts and practices of Defendants constitute discrimination against Plaintiff in violation of the New York Labor Law, New York State Equal Pay law by unlawfully paying black employees less than white employees for equal work.

91.     Defendants' violations of the New York Labor Law, New York State Equal Pay law were willful, entitling Plaintiff to all available damages, including statutory liquidated damages.

## AS AND FOR THE THIRD CAUSE OF ACTION
*Aider and Abettor Liability under the NYSHRL, and the NYCHRL Against Defendant Pirlamarla*

92.     Plaintiff repeats and realleges the allegations contained in the paragraphs above as if separately set forth here.

93.     The NYSHRL and NYCHRL provide that it shall be an unlawful discriminatory practice "For any person to aid, abet, incite, compel, or coerce the doing of any acts forbidden under this article, or attempt to do so."

94.     Defendant Pirlamarla aided and abetted Defendant Amazon's discrimination by aiding, abetting, and inciting Defendant Amazon's disparate treatment of Plaintiff via her own

14

discriminatory refusal to support Plaintiff's promotion – thus delaying said promotion, and aiding, abetting, and inciting Amazon's decision not to reassign Plaintiff to another role during the alleged 'restructuring' which took place in April 2023.

95.     By virtue of Defendant Pirlamarla's conduct as alleged herein, Plaintiff has been seriously injured.

96.     Plaintiff is entitled to all remedies available for violations of the NYSHRL and NYCHRL.

### AS AND FOR THE FOURTH CAUSE OF ACTION
*Race Discrimination in Violation of Section 1981*
*Against All Defendants*

97.     Plaintiff repeats and realleges the allegations contained in the paragraphs above as if separately set forth herein.

98.     Plaintiff was discriminated against in the terms and conditions of her employment because of her race in violation of Section 1981.

99.     Plaintiff is Black and therefore is a member of a protected class.  Plaintiff was qualified to work for Defendants.  She more than satisfactorily performed the duties required for her position.

100.    Defendant Amazon further intentionally subjected Plaintiff to disparate treatment in the workplace by denying her promotions for which she was qualified while promoting less qualified coworkers, subjecting her to a hostile work environment, and terminating her employment while retaining similarly situated non-Black employees during an alleged reduction in force.

101.    As a direct and proximate result of said unlawful employment practices and disregard for Plaintiff's rights and sensibilities, Plaintiff has lost and will continue to lose

15

substantial income, including, but not limited to wages, social security, and other benefits due to her.

102.    As a further direct and proximate result of said unlawful employment practices, Plaintiff has suffered extreme mental anguish, outrage, severe anxiety about her future and her ability to support herself and her family, harm to her employability and earning capacity, painful embarrassment among her family, friends, and coworkers, damage to her good reputation, disruption of her personal life, and the loss of enjoyment of the ordinary pleasures of everyday life.

103.    Defendant Amazon acted intentionally and with malice and/or reckless indifference to Plaintiff's protected rights under Section 1981.

104.    Based on Defendants' discrimination, Plaintiff is entitled to all remedies in violation of Section 1981 against all Defendants.  Plaintiff shall also seek attorney's fees and punitive damages.

## RELIEF DEMANDED

**WHEREFORE**, the Plaintiff respectfully requests judgment:

a)    Declaring that the Defendants engaged in unlawful discrimination, unequal pay and retaliation in violation of the Federal, State, and City statutes cited herein;

b)    Declaring Defendants' conduct complained herein to be in violation of the Plaintiffs' rights under the New York Labor Law, and its regulations;

c)    Awarding Plaintiff prejudgment and post-judgment interest;

d)    Awarding the cost, disbursements and legal fees of this action, interest from the date of the verdict rendered hereon and reasonable attorney's fees.

e)      Granting such other and further relief as this Court may deem just and proper under

the circumstances.

Plaintiff demands a Jury Trial.

Dated:  New York, New York
        September 22, 2025

Respectfully submitted,

GODDARD LAW PLLC
*Attorneys for Plaintiff*

By: *Megan Goddard*
        Megan S. Goddard, Esq.
        39 Broadway, Suite 1540
        New York, New York 10006
        Office: (646) 964-1178
        Megan@goddardlawnyc.com